UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


UNITED STATES OF AMERICA, )
)
       Plaintiff, )
)
      vs. )
)   Case No. 4:05CR0668 HEA (AGF)
THOMAS WALKER, )
)
      Defendant. )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the pretrial motions filed by Defendant, Thomas

Walker. Pretrial matters were referred to the undersigned United States Magistrate Judge

under 28 U.S.C. § 636(b). Defendant filed a motion to suppress evidence and statements.

(Doc. #17). An evidentiary hearing was held on January 30, 2006. The government was

represented by Assistant United States Attorney Thomas J. Mehan. Defendant was

present and represented by his attorney, Assistant Federal Public Defender Brian S.

Witherspoon. At the hearing, the government presented the testimony of Detective

Phillip Menendez, who has been employed with the St. Louis Metropolitan Police

Department (SLMPD) for approximately 13 years, and the witness was cross-examined

by defense counsel. Based on the testimony and evidence adduced and having had an

opportunity to observe the demeanor and evaluate the credibility of the witness, the

undersigned makes the following findings of fact and conclusions of law.

# FINDINGS OF FACT

On November 9, 2004, Det. Phillip Menendez applied for a state search warrant related to Defendant's residence at 8115 N. Broadway, second floor south (the "Residence"). Det. Menendez has been a detective in the Narcotics Division of the SLMPD for approximately six years and had been involved in narcotics investigations as a member of that division for approximately five years at the time of these events.

The affidavit in support of the search warrant recites that on November 8, 2004, Det. Menendez and Det. Jason Scheel, who is also assigned to the Narcotics Division, were contacted by a confidential informant (the "CI") who stated that he/she had been inside the Residence and had observed Defendant in possession of cocaine base or crack cocaine and had seen Defendant in possession of a handgun when selling crack cocaine. The CI further stated that he/she could purchase crack cocaine from Defendant. The CI identified Defendant by name and described him as a black male, approximately 55-60 years old, 5'8" tall, and approximately 160 pounds. The CI was known to Det. Menendez and had provided him with information in the past that had resulted in two arrests for the sale of crack cocaine.

On November 8, 2004, Dets. Menendez and Scheel obtained a photograph of a Thomas Walker, born on January 12, 1948, which matched the description given by the CI, and the CI positively identified the person in the photograph as being the person from whom he/she could purchase the crack cocaine.

As the affidavit further recites, on November 9, 2004, at approximately 1:40 a.m., the CI made a controlled purchase of crack cocaine from Defendant. The CI was wired for audio, was searched prior to the transaction to assure he/she was free of contraband, and was given $100 to make the purchase. With officers conducting surveillance, the CI knocked on the back door of the Residence and was met by Defendant. In a conversation that was monitored by officers on the wire, the CI spoke with Defendant and asked him for $100 worth of crack cocaine. The CI advised the officers that Defendant retrieved a transparent brown plastic medicine bottle from another room and gave the CI five pieces of crack cocaine from the bottle in exchange for the $100. The CI observed that there was more crack cocaine inside the bottle. The CI then met with the officers and gave them the crack cocaine, which was sent to the police lab.

The affidavit in support of the search warrant further states that the officers confirmed that Defendant had numerous arrests for drug possessions, robberies, stealing, burglaries, and unlawful use of a weapon offenses. He was listed as on probation/parole for "VMCSL/Possess" and identified as "Armed and Dangerous." The detectives also determined that there was an active drug complaint on the Drug Hotline related to Defendant's Residence, in which a black male named "Thomas" was identified as one of two persons selling drugs out of the apartment. The computer also contained a police report listing Thomas Walker as the victim of a robbery on September 27, 2004, in which Defendant identified 8115 N. Broadway as his residence.

The affidavit was presented to St. Louis Circuit Judge Joan M. Burger and sworn to at 11:30 a.m. on November 9, 2004. No information other than what is set forth in the affidavit was presented to the judge. Based on the information provided in the affidavit, Judge Burger issued a search warrant for the Residence on November 9, 2004. The Residence is described as a two story, multi-family residence, with 8115 clearly marked in front. The target door is described as the door furthest south on the second floor rear. The property covered by the warrant was "Cocaine Base (Crack Cocaine), U.S. Currency, Drug Transaction Records, Weapons, and any other instruments used of the crime," and permitted a search of the Residence with ten days, day or night. Govt. Ex. A.

At approximately 10:00 p.m., Dets. Menendez and Scheel, two or three other members of the Narcotics Division, and members of the Mobile Reserve Unit, went to the Residence to execute the warrant. All of the officers were in uniforms that clearly identified them as police officers. The Mobile Reserve officers effected entry while Det. Menendez and the other members of the Narcotics Division secured the front and back of the building. The Mobile Reserve officers knocked on the back door – the same door used by the CI – announced that they were police and had a search warrant, and waited for a time period that was probably less than one minute. They then knocked and announced the information a second time and waited for approximately the same period of time. The officers heard no response, and concerned that the occupants might be arming themselves or destroying evidence, they forced the door open. The Defendant and

4

three other individuals were inside the Residence, and they were all placed in handcuffs while the Residence was secured.

After the Residence was secured, Det. Menendez and other detectives entered the Residence. Det. Menendez saw Defendant, whom he recognized from the photograph he had previously seen, in the kitchen with the three other occupants. Det. Menendez identified himself, stated he was with the Narcotics Division, and advised Defendant that he was under arrest for the sale of crack cocaine earlier that day. He then advised Defendant of his Miranda rights, and that he had a search warrant that permitted them to search the Residence for narcotics, U.S. currency, weapons, and any instruments used in the distribution or sale of narcotics, specifically crack cocaine. Det. Menendez asked Defendant if he any of those items in the apartment. Defendant stated that there were no drugs in the apartment, but that he did have a gun in his room for his own protection. At the time they were standing in the kitchen next to the room Defendant had identified, and Defendant motioned with his head where the firearm was located. At the time of this conversation, Defendant did not appear to be under the influence of any drugs or narcotics, and the officers did not make threats to induce Defendant to waive his rights. Det. Scheel went to the location that Defendant had indicated and found a firearm which he seized.

During the course of the search, the officers located a closet that was padlocked, and Det. Menendez asked Defendant where the key was, but he did not respond. Det. Menendez searched Defendant and located some keys in the right, front pocket of

5

Defendant's pants, one of which opened the locked closet. Inside the closet the officers located two more firearms, a plastic bag with crack cocaine, medicine bottles with crack cocaine and marijuana, and a piece of mail that was addressed to Defendant at the Residence. Officers also located crack cocaine in a medicine bottle on the kitchen counter. The items seized are listed on the return which appears as part of Govt. Ex. A.

Defendant was transported to the station, where he was booked. On the way to the station, Defendant was offered the opportunity to cooperate, but he declined. At the station Defendant was also offered the opportunity to reduce his prior statements to writing, but he declined, stating that he had spent his life in the penitentiary. No other statements were made by Defendant. A computer check was run on the other individuals in the residence, who made written statements regarding what had occurred that night, after which they were released.

## CONCLUSIONS OF LAW

### A. Probable Cause for Search

Defendant asserts that the search warrant is facially insufficient and does not provide probable cause for the search. To be valid, search warrants must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband, or a person for whose arrest there is probable cause, may be found in the place to be searched. Warden v. Hayden, 387 U.S. 294 (1967); Johnson v. United States, 333 U.S. 10 (1948); Rule 41, Federal Rules of Criminal Procedure. The quantum of evidence needed to meet this

6

probable cause standard has been addressed by the Supreme Court on numerous

occasions. "In dealing with probable cause . . . as the very name implies, we deal with

probabilities. These are not technical; they are factual and practical considerations of

everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar

v. United States, 338 U.S. 160, 176 (1949). Probable cause is "a fluid concept -- turning

on the assessment of probabilities in particular factual contexts -- not readily, or even

usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983).

Applications and affidavits should be read with common sense and not in a grudging,

hyper-technical fashion. United States v. Ventresca, 380 U.S. 102, 109 (1965). Probable

cause may be found in hearsay statements from reliable persons, Gates, 462 U.S. at 245;

in hearsay statements from confidential informants corroborated by independent

investigation, Draper v. United States, 358 U.S. 307, 313 (1959); or in observations made

by trained law enforcement officers, McDonald v. United States, 335 U.S. 451, 454

(1948); United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003), cert. denied, 541 U.S.

1081 (2004). While these are some of the ways in which probable cause is commonly

established, they are by no means all-inclusive. Information contained in applications

and affidavits for search warrants must be examined in light of the totality of the

circumstances presented. Gates, 462 U.S. at 230. Once a judicial officer has issued a

warrant upon a finding of probable cause, that finding deserves great deference if there is

a substantial basis for the finding. Id. at 236.

As set forth in the affidavit, here the officers had received information from a confidential informant who had proved reliable in the past and whose information had led to arrests involving sales of crack cocaine. The officers thereafter corroborated that information by confirming that an individual matching the description provided resided at the Residence, and the CI identified a picture of Defendant as the Thomas Walker he knew. The officers further confirmed that said individual had numerous arrests, including arrests for drug possess and unlawful use of a weapon, was listed as "armed and dangerous," and was on probation/parole for possession of a controlled substance. More importantly, the CI thereafter conducted a controlled purchase of crack cocaine from Defendant at the Residence, which was monitored by the officers both visually and through a Kel wire worn by the CI.

From a review of the affidavit, the Court finds that there is ample probable cause to support the warrant. See United States v. Underwood, 364 F.3d 956, 963 (8th Cir. 2004) (information from reliable informant and corroborated by independent officer investigation sufficient for probable cause), vacated and remanded on *Booker* grounds, 125 S.Ct. 1037 (2005); United States v. Gabrio, 295 F.3d 880, 882 (8th Cir. 2002) (probable cause found based on firsthand information of reliable informant); United States v. Pennington, 287 F.3d 739, 742-43 (8th Cir. 2002). Even if there was some question regarding the probable cause or the degree of detail provided – and there is not – the officers relied, in good faith, on the warrant. United States v. Leon, 468 U.S. 897, 922 (1984); United States v. Marion, 238 F.3d 965, 969 (8th Cir. 2001).

Defendant acknowledged at the hearing that he was not challenging the manner in which the search warrant was issued or executed, and the Court, in any event, finds nothing improper in the manner in which the search warrant was issued or entry was made. Nor did the officers exceed the scope of the warrant in conducting the search.

**B. Arrest and Search of Defendant**

Officers have probable cause to effect a warrantless arrest at the moment when they have knowledge of facts and circumstances, grounded in reasonably trustworthy information, that would warrant a belief by a reasonably prudent person that the subject has been or is committing an offense. United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003). Based on the totality of the information known to the officers at the time, including the information contained in the search warrant affidavit and the controlled purchase that they monitored, the officers had probable cause to arrest Defendant without a warrant. See United States v. Velazquez-Rivera, 366 F.3d 661, 664-65 (8th Cir. 2004); United States v. Powell, 39 F.3d 894, 895-96 (8th Cir. 1994); United States v. Sherrill, 27 F.3d 344, 347 (8th Cir. 1994).

Following Defendant's lawful arrest, the officers were authorized to search Defendant incident to his arrest. New York v. Belton, 453 U.S. 454, 457 (1981); United States v. Williams, 165 F.3d 1193, 1195 (8th Cir. 1999). They were therefore authorized to seize as evidence the keys located in his pant pocket.

## C.  **Statements Made by Defendant**

As grounds for the motion to suppress his statements, Defendant asserts that his statements were the fruit of an unlawful search and seizure, and that Defendant was not advised of his rights under Miranda.  Defendant's first ground fails for the reasons set forth above.  Defendant's second ground fails because the Court finds, as a factual matter, that Defendant was advised of his Miranda rights prior to making any statements.

On this record, the Court further finds that Defendant knowingly waived his rights, and that the statements made by him were voluntarily.  A defendant may knowingly and intelligently waive his rights and agree to answer questions.  Miranda v. Arizona, 384 U.S. 436, 479 (1966).  When the prosecution seeks to introduce in evidence a statement made by a defendant while in custody, it has the burden of showing by a preponderance of the evidence that the statement was made after a voluntary, knowing, and intelligent waiver of Miranda rights by the defendant.  Colorado v. Connelly, 479 U.S. 157 (1986). The court must examine the totality of the circumstances surrounding the interrogation to determine whether the waiver was the product of a free and deliberate choice, rather than intimidation, coercion, or deception, and whether the waiver was made with an awareness of the right being abandoned and the consequences of the decision to abandon it.  Moran v. Burbine, 475 U.S. 412 (1986).  The statement must be voluntary and not the product of any police conduct by which the defendant's will is overborne.  Connelly, 479 U.S. at 170;  Haynes v. Washington, 373 U.S. 503 (1963).  "The requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry."

10

Dickerson v. United States, 530 U.S. 428, 444 (2000).  As the Supreme Court has recognized, however, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of Miranda, are rare."  Berkemer v. McCarty, 468 U.S. 420, 433 n.20 (1984).  See Dickerson, 530 U.S. at 444.

Defendant Walker was advised of his rights immediately after his arrest.  At the time, he was 56 years old and had prior experience with law enforcement.  He appeared to understand what was being said, did not appear to be under the influence of drugs or alcohol, and his statements were not the result of any threats, promises, or coercion.  That he later declined to make a written statement further confirms Defendant's understanding of his rights and the voluntariness of his oral statements.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements [Doc. No. 17] be **denied**.

The trial in this matter has been set for **Monday, March 20, 2006, at 9:30 a.m.**, before the **Honorable Henry E. Autrey**.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may

11

result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d
356 (8th Cir.1990).

_____
AUDREY G. FLEISSIG
United States Magistrate Judge

Dated this 31st day of January, 2006.