UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:05CR668 HEA |
| | ) | |
| THOMAS WALKER, | ) | |
| | ) | |
| Defendant. | ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Magistrate Judge Audrey G. Fleissig's Order and Recommendation that Defendant Thomas Walker's Motion to Suppress Evidence and Statements, [#17], be denied.

On January 30, 2006, Judge Fleissig held an evidentiary hearing on Defendant's motion to suppress evidence and statements. On January 31, 2006, Judge Fleissig recommended that Defendant's motion be denied based on the evidence and testimony adduced at the hearing. Defendant Walker filed objections to the Report and Recommendation, claiming Judge Fleissig's decision was contrary to the law and is against the weight of the evidence and testimony. Defendant later filed additional objections, urging the Court to "review the testimony of the witnesses from the evidentiary hearing as to their credibility and the reasonableness of their testimony."

Pursuant to 28 U.S.C. § 636, the Court will conduct a *de novo* review of those portions of the Report and Recommendation to which Defendant Walker objects.

**<u>Findings of Fact</u>**

Defendant Walker objects to Judge Fleissig's findings of fact on the basis that they are against the weight of the evidence. The Court finds the facts in this case to be as follows:

On November 9, 2004, Detective Phillip Menendez [1] applied for a search warrant of Defendant Walker's residence, located at 8115 N. Broadway, St. Louis, Missouri. The affidavit in support of the search warrant avers that on November 8, 2004, Det. Menendez and Det. Jason Scheel, also a detective assigned to the Narcotics Division, were contacted by a confidential informant ("CI") who stated that he/she had been inside Defendant's residence at 8115 N. Broadway and observed Defendant in possession of cocaine base or crack cocaine and a handgun. The CI also stated that Defendant was selling the cocaine and that he/she could purchase crack cocaine from Defendant. The CI identified the Defendant by name and described him as a black male, 55-60 years old, 5'8" tall, and approximately 160 pounds. The CI was known to Det. Menendez and had provided him with information in the past which had resulted

---

[1]Detective Menendez has been employed with the St. Louis Metropolitan Police Department for 13 years and has been a detective in the Narcotics Division of the department for approximately six years.

in arrests for the sale of crack cocaine.

Also on November 8, 2004, Dets. Menendez and Scheel obtained a photograph of a Thomas Walker, born on January 12, 1948, which matched the description given to them by the CI, and the CI positively identified the photographed person as being Defendant Walker. That evening, at approximately 1:40 a.m., the CI made a controlled purchase of crack cocaine from Defendant while wired for audio.[2] Officers conducted surveillance as the CI knocked on the back door of Defendant's residence. Defendant came to the door, and the CI asked him for $100 worth of crack cocaine. The conversation was being monitored by officers on the wire. The CI later informed officers that Defendant retrieved a brown plastic medicine bottle from another room and gave the CI five pieces of crack cocaine in exchange for the $100. The CI observed more crack cocaine inside the medicine bottle. After the transaction, the CI met with the officers and relinquished the crack cocaine, which was sent to the police lab for examination.

The affidavit in support of the search warrant states that officers found Defendant to have numerous prior arrests for drug possessions, robberies, stealing, burglaries, and unlawful use of weapon offenses. Detectives confirmed that there was

---

[2] The CI was searched prior to the transaction to make certain he/she was free of contraband and was given $100 to make the purchase.

an active drug complaint on the Drug Hotline relating to Defendant's residence, in which a black male named "Thomas" was identified as one of the two persons selling drugs out of the residence. Defendant was also listed in the police computer as being the victim of a robbery in 2004, in which Defendant listed his residence as being 8115 N. Broadway.

On November 9, 2004, the Honorable Judge Joan Burger of the Missouri Circuit Court in the City of St. Louis was presented with the affidavit. No other information except that which was set forth in the affidavit was sworn to by the officers. Judge Burger issued a search warrant for Defendant's residence based on the information provided to her in the affidavit. The search warrant described Defendant's residence as a two-story, multi-family residence, with 8115 clearly marked in front. The target door was described as the door furthest South on the second floor rear. The items covered by the warrant was "Cocaine Base (Crack Cocaine), U.S. Currency, Drug Transaction Records, Weapons, and any other instruments used of the crime." The warrant permitted a search of the residence within ten days, day or night.

That evening, Detectives Menendez and Scheel, other members of the Narcotics Division, and members of the Mobile Reserve Unit went to Defendant's residence to execute the warrant. All officers were wearing uniforms or raid jackets which clearly identified them as police officers. Det. Menendez and other members of the Narcotics

Division secured the front and back of the building, while the Mobile Reserve officers knocked on the back door and announced that they were police and had a search warrant. They waited for nearly a minute, then knocked a second time and announced they were police with a search warrant. After another minute or so, officers still had not heard a response. Because they were concerned that the occupants might be destroying evidence or arming themselves, the officers forced the door open. Defendant Walker and three other individuals were inside the residence, and all were placed in handcuffs while the residence was secured.

When Det. Menendez entered the residence, he saw Defendant in the kitchen with the three other individuals. Menendez recognized Defendant from the photograph he had previously seen. Menendez identified himself to Defendant and advised him that he was under arrest for the sale of crack cocaine earlier that day. Defendant was then advised of his *Miranda* rights, and that police had a search warrant which permitted them to search the residence for drugs, money, weapons, and any instruments used in the distribution or sale of drugs. When asked whether any of those items were in the residence, Defendant stated that there were none, except that he had a gun in his room for his own protection. Defendant motioned with his head toward the room where the gun was located. Det. Scheel went to the room Defendant motioned toward and found a firearm which he seized. Defendant did not appear to be under the

influence at the time of the conversation, and officers did not make any threats to induce Defendant to waive his rights.

During the search, officers located a closet which had a padlock on it. Det. Menendez asked Defendant where the key was, but Defendant did not respond. Menendez searched Defendant and located a set of keys in Defendant's front right pocket. One of the keys in the set opened the padlock on the closet. Officers discovered two more firearms in the closet, a plastic bag with crack cocaine, medicine bottles with crack cocaine and marijuana, and a piece of mail which was addressed to Defendant Walker at the residence. A medicine bottle containing crack cocaine was also discovered in the kitchen on the counter.

Defendant was transported to the police station, where he was booked. Defendant was offered the opportunity to cooperate on the way to the station, but he declined. At the station, Defendant was offered the opportunity to reduce his prior statement to writing, but he declined, saying he had spent his entire life in the penitentiary. No other statements were made by Defendant. After making written statements about what occurred that evening, the other individuals arrested at the residence were released.

Defendant Walker objects to Judge Fleissig's findings of fact on the basis that they are against the weight of the evidence. This Court, however, concludes otherwise.

A thorough review of the testimony from the evidentiary hearing and supporting documents reveals the facts to be as set forth above, and in no way do such facts deviate from Judge Fleissig's findings. Detective Menendez testified as to all of the facts set forth above, under oath, and to the best of his recollection. Defendant, on the other hand, did little to refute the testimony of Menendez on cross-examination and offered no documents, witnesses testimony or other evidence to contradict the testimony. This Court finds the evidence offered by the Government to be credible, and Defendant's objections to Judge Fleissig's findings of fact are overruled.

## Conclusions of Law

Defendant Walker, in objecting to Judge Fleissig's conclusions of law, merely states that Judge Fleissig's ruling was contrary to the law, and against the weight of the evidence and testimony. Defendant's objections as to Judge Fleissig's conclusions of law are nebulous in nature, thus the Court must assume Defendant objects to the Judge Fleissig's conclusions of law in their entirety.

**Search Warrant**

The Court first finds the search of Defendant's residence to be valid. Officers possessed the requisite probable cause for obtaining the search warrant, because the officers had reason to believe that narcotics and weapons would be found in Defendant's residence.

Probable cause means a "fair probability that . . . evidence of a crime will be found in a particular place," given the circumstances set forth in the affidavit. *United States v. Horn,* 187 F.3d 781, 785 (8th Cir. 1999) (*citing Illinois v. Gates,* 462 U.S. 213, 238 (1983)). When reviewing the legal sufficiency of the basis for the issuance of a search warrant, the Court must determine whether the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the warrant. *United States v. Luloff,* 15 F.3d 763, 768 (8th Cir. 1994). There must be a fair probability, based on the totality of circumstances described in the officer's affidavit, and the veracity and basis of knowledge of the persons supplying hearsay information, that contraband or evidence of a crime will be found in a particular place. *United States v. Coleman,* 349 F.3d 1077, 1083 (8th Cir. 2003).

The record reflects that officers obtained reliable information from a confidential informant that Defendant was selling narcotics from his residence at 8115 N. Broadway and was in possession of a handgun. The CI also assisted officers in documenting via concealed wire transmission a narcotics transaction between Defendant and the CI which occurred at Defendant's residence within 24 hours of the officers' application for the search warrant. These facts and circumstances were sufficient to warrant the officers' belief that drugs and/or firearms were being kept inside Defendant's residence. The affidavit informed the issuing judge of these occurrences and that the CI was

known to be reliable based on prior information he had provided. Thus, the search warrant application was based on the officers' probable cause and the issuing judge had a substantial basis for finding that probable cause existed that narcotics, firearms, and/or other evidence of a crime would be discovered at 8115 N. Broadway. Therefore, the search warrant was lawfully issued.

As for the search warrant's execution, there is no evidence that officers executed the warrant in any other way than lawfully. After twice knocking on Defendant's door and waiting for a response, officers entered the residence. Defendant was temporarily detained by being placed in handcuffs and positioned in the kitchen. A search of the residence uncovered one firearm in Defendant's bedroom, two more firearms in a closet along with a plastic bag with crack cocaine, medicine bottles with crack cocaine and marijuana, and a piece of mail which was addressed to Defendant Walker at the residence. Another medicine bottle containing crack cocaine was discovered in the kitchen. Nothing in the record suggests that the execution of the warrant was illegal. Therefore, Defendant's objections to Judge Fleissig's conclusions of law in this regard are overruled.

**Arrest of Defendant**

Officers also had probable cause to arrest Defendant Walker, particularly since officers had reason to believe that drugs and firearms would be discovered in

Defendant's residence. Probable cause for arrest exists if the facts and circumstances known by officers at the time of the arrest and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that person had committed or was in the process of committing a crime. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). As discussed in the paragraphs above, the search of Defendant's residence was lawful. Further, officers obtained reliable information from a confidential informant that Defendant was selling crack cocaine out of his residence, was in possession of at least one firearm, and did, in fact, sell crack cocaine out of the residence to the CI while officers performed surveillance. These are facts and circumstances sufficient to warrant the officers' belief that a crime had been or was being committed. Thus, the resulting arrest based on the officers' probable cause was lawful. Defendant's objections to Judge Fleissig's conclusions of law in this regard are overruled.

**Defendant's Statements**

Finally, the Court finds that Defendant was properly advised of his *Miranda* rights. Pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966), Detective Menendez advised Defendant of his constitutional rights to remain silent and to counsel after the arrest. The record reveals that the statements made by Defendant thereafter were spontaneous and not the result of any interrogation. Further, the statements were

voluntary, because they were not the result of coercion, intimidation on the part of officers, nor were they made as a result of any promises given to Defendant.  *See Colorado v. Connelly,* 479 U.S. 157, 169-70 (1986); *United States v. Goudreau,* 854 F.2d 1097, 1099 (8th Cir. 1988).  Furthermore, the evidence reveals that Defendant did not appear to be under the influence of narcotics when his limited statements were made.  Defendant's objections to Judge Fleissig's conclusions of law in this regard are overruled.

## Conclusion

Based on the foregoing findings and conclusions, the Court adopts the well-reasoned Report and Recommendation of Judge Fleissig in its entirety.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Walker's Motion to Suppress Evidence and Statements, [#17], is denied.

Dated this 15th day of March, 2006.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE